IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CAROLYNE LOHR

Plaintiff,

v.

DEXTER OAKS COOPERATIVE, et al.

Defendants.

Civ. No. 6:26-cv-02055-AA

**OPINION & ORDER**

---

AIKEN, District Judge.

Self-represented Plaintiff Carolyne Lohr seeks leave to proceed *in forma pauperis* ("IFP") in this action against Dexter Oaks Cooperative, Commonwealth Property Management Services Company, Kristin Shrestha, Mary Ellen Lee, Dawn Hymer, Jane and John Does 1-10, Oregon Housing and Community Services ("OHCS"), and Andrea Bell, the executive director of OHCS. For the reasons set forth below, Plaintiff's IFP Petition, ECF No. 2, is GRANTED, and her Complaint, ECF No. 1, is DISMISSED in part with leave to amend.

**LEGAL STANDARD**

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for

meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1). Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

With regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

**DISCUSSION**

When assessing an IFP petition, the Court first must determine whether the plaintiff has made a sufficient showing of indigency. Here, the Court is satisfied with Plaintiff's showing of indigency, and the IFP petition is granted.

Turning to the Complaint, Plaintiff brings nine claims: (1) refusal to make reasonable accommodations under 42 U.S.C. § 3604(f)(3)(B) against the "Cooperative Defendants"; (2) refusal to permit reasonable modifications under § 3604(f)(3)(A) against the Cooperative Defendants; (3) discrimination in the rental of a dwelling and in its terms, conditions, and privileges under § 3604(f)(1)-(2) against the Cooperative Defendants; (4) coercion, intimidation, threats, interference, and retaliation under § 3617 against the Cooperative Defendants; (5) declaratory and injunctive relief compelling membership under ORS 62.809 in the Dexter Oaks Cooperative; (6) declaratory judgement regarding unlawful acts by the board of Dexter Oaks Cooperative; (7) financial abuse of a vulnerable person under ORS 124.100-110 against the Cooperative Defendants; (8) intentional interference with

economic relations against the Cooperative Defendants; and (9) failure to make a reasonable modification under 42 U.S.C. § 12132 and 29 U.S.C. § 794 against Defendants Oregon Housing and Community Services Department ("OHCS") and Andrea Bell, the executive director of OHSC, in her official capacity. While not defined in the Complaint, the Court infers that the "Cooperative Defendants" are the non-state parties, all of whom have a direct connection to the Dexter Oaks Cooperative, so all defendants except OHCS and Andrea Bell.

The factual background involves Plaintiff's living conditions. Plaintiff lives in a mobile home (the "Home") in Space 20 of Defendant Dexter Oaks Cooperative (the "Cooperative"), a manufactured home park organized as a cooperative. Compl. ¶ 1. Tenants can become members if they meet certain qualifications. *See* Compl. ¶ 42; ORS 62.809(1). Plaintiff is 81 years of age and alleges that she suffers from "post-stroke seizures and status epilepticus, a severe seizure disorder." *Id.* The Home is from 1958 and "is poorly insulated and cannot hold a stable temperature." *Id.* "Cold is a trigger for [Plaintiff's] seizures." *Id.*

Plaintiff attempted to address her living conditions in two ways. First, Plaintiff applied for a program through Defendant OHCS that would allow her to replace her mobile home. *Id.* ¶ 2. She was conditionally approved for "a forgivable loan of up to $95,000 toward a new home, a grant of up to $15,000 to decommission and dispose of the old one, and a grant of up to $50,000 for energy efficiency." *Id.* The required conditions were "verification of ownership and residency and of the park's permission," both of which were required to be completed within 60 days and would

expire on July 31, 2026. *Id.* ¶ 48. The Cooperative Defendants did not respond to the request before the deadline, denied the permission in August 2026, but gave permission on August 25, 2025. *Id.* ¶ 12.

Plaintiff's other solution was to move into a different mobile home owned by her son and located in the same community at Space 00. *Id.* ¶ 6. Plaintiff "asked Defendants, by certified mail, with her seizure prescription and the medical literature on temperature and seizures enclosed, to let her move into it as a reasonable accommodation" in January 2026, but Plaintiff alleges that Cooperative Defendants never responded. *Id.* Plaintiff also alleges that she planned to purchase the home in Space 00 from her son that month. *Id.* ¶ 107. The Complaint does not say whether the request for the accommodation or the request for the transfer of ownership happened first. Defendants did respond to the request for purchase, as Plaintiff states they conditioned that sale "on payment of more than $12,000 owed by a former occupant who had been evicted." *Id.* ¶ 107. Additionally, Plaintiff requested the Board's approval to have a chair lift installed in the mobile home in August 2026. *Id.* ¶ 57. Plaintiff alleges that the Board never responded.

Another alleged factual basis for relief is Defendants' refusal of membership to Plaintiff. She applied for Membership twice via mail, first in December 2025 and again in August 2026. *Id.* at ¶¶ 10, 12. The first envelope was returned to her unopened. *Id.* ¶ 94. The second tender, a check, was never cashed. *Id.* Plaintiff also alleges that she was denied access to member meetings, as well as the meeting minutes and other Cooperative documents. *Id.* ¶¶ 52, 55.

**I. Count 1: Refusal to make reasonable accommodations under 42 U.S.C. § 3604(f)(3)(B).**

Under 42 U.S.C. § 3604(f)(3), disability "discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.] 42 U.S.C. § 3604(f)(3)(b). In a "failure to accommodate" claim, a plaintiff must show: "1) the existence of a covered handicap; 2) the defendant's knowledge or constructive knowledge of that handicap; 3) that an accommodation "may be necessary"; 4) that the accommodation is reasonable; and 5) that the defendant refused to make the necessary and reasonable accommodation upon request." *Salisbury v. City of Santa Monica*, 998 F.3d 852, 857-58 (9th Cir. 2021) (citing *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189–90 (9th Cir. 2021)). "A refusal may be actual or constructive." *Boffoli v. Swalko*, No. 3:16-CV-01463-YY, 2018 WL 1701884 at *3 (D. Or. Jan. 22, 2018), report and recommendation adopted, 2018 WL 1585745 (D. Or. Mar. 30, 2018) (citing *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017)).

Here, Plaintiff alleges she has a covered handicap—her seizure disorder. She alleges that she informed the Cooperative Defendants by mailing her medication list and some medical literature.[1] Due to the alleged effects of cold on Plaintiff's seizure disorders, two requests meet the "may be necessary" requirement: the move to Space 00 and approval of the OHCS replacement. For the requested "ceiling lift," the Court

[1] The Court notes that neurologist's letter referenced in the first paragraph of the Complaint was composed on September 29, 2026, after all relevant events. Compl. ¶¶ 1,35.

sees no connection between Plaintiff's seizure disorder and her requested accommodation, and Plaintiff offers none. This stands in stark contrast to detailed explanation of the effect of cold on Plaintiff's seizure condition. Absent additional facts, the issue with the ceiling lift is not a basis for this claim.

At this stage, the reasonableness of the accommodation element cannot be adequately analyzed but has been adequately pleaded. To the last element, Plaintiff pleads a constructive denial of the OHCS approval and the move to Space 00.

Plaintiff has adequately pleaded this count as to the OHCS program and the move the Space 00. As to the ceiling lift, Plaintiff has not adequately pleaded that claim, and it is dismissed. Plaintiff has leave to amend this count.

## II. Count 2: Refusal to Permit Reasonable Modifications under § 3604(f)(3)(A).

The second claim follows the same elements of the first claim. Section 3604(f)(3)(A) makes it unlawful to "refus[e] to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises" with one exception not relevant here.

Here, Plaintiff alleges that the lack of action on the ceiling lift and the OHCS application form the basis of this claim. As discussed in the previous section, the Court cannot find a connection between the seizure disorder and the ceiling lift.

Turning to the OHCS program, discrimination under this subsection is limited to "reasonable modifications of existing premises." The wholesale replacement of a mobile home falls is not a reasonable modification because replacement is beyond

modification, and the replacement of a premises does not jibe with the "existing premises" requirement.

Count 2 is dismissed with leave to amend.

### III. Count 3: Discrimination in the Rental of a Dwelling and in Its Terms, Conditions, and Privileges under § 3604(f)(1)-(2).

Under § 3604(f)(1), it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1). Under the following subsection, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person."

This claim rests on three acts of alleged discrimination: (1) the refusal of membership; (2) the denial of the move to Space 00; and (3) the failure to decide on the OHCS program prior to the deadline.

Regarding the denial of Plaintiff's application for membership in the Dexter Oaks Cooperative, to become a member of such a group under Oregon law, a person must "own[] a manufactured dwelling that is, or is to be, located in a manufactured dwelling park of the cooperative and occupied by the person[.]" ORS 62.809(1)(a).

Plaintiff did not own a dwelling in the park until August 19, 2026. This means the refusal of membership in December 2025 was consistent with Oregon law. Additionally, while Plaintiff pleads the exact date of the title transfer, Plaintiff does not plead the date of the second membership application except as “August 2026.” That date is an important fact because if it was prior to August 19, 2026, Plaintiff certainly did not qualify for membership because she was missing a statutory requirement. At no point does the Complaint state that Plaintiff was refused membership *after* becoming an owner.

Importantly, Oregon law allows a park cooperative to set additional membership requirements in a cooperative’s bylaws. ORS 62.809(1)(d). Plaintiff alleges that Article 3.1(3) of the Bylaws requires “that the applicant and household” (1) “are not a direct threat to the safety of others or their property;” (2) “are not current illegal substance abusers and have no history of violent or drug-related crimes; (3) “have an ‘acceptable credit history and credit score’”; (4) “have household gross income ‘sufficiently in excess of the space lease fee and from a verifiable, legal, and reasonably stable source’”; (5) “have a three-year ‘eviction-free’ rental history, subject to the Board's review of ‘extenuating circumstances’ with the applicant”; and (6) “commit to the purposes and policies of the Cooperative.” Compl. ¶ 42.

While Plaintiff alleges generally that she meets all the Cooperative’s requirements, that is a conclusion. Factually, she only alleges that she meets four of the bylaw requirements. *See* Compl. ¶ 68. She fails to allege that she has an acceptable credit history and credit score. Nor does she allege that she has a three-

year eviction free record. In fact, another case brought in this District by Plaintiff—and referenced by her in the Complaint—deals with a successful eviction action against Plaintiff at a different park cooperative.[2] *See Lohr v. Colorado Lake Cooperative, Inc.*, No. 6:26-cv-00456-AP (D. Or.) ECF No. 43 at 8 (Plaintiff describing state court action as "eviction" and stating that "the state court entered a general judgment of restitution of the premises").

Additionally, Plaintiff must allege that the denial was because of the handicap. Absent additional facts and clarification, this cannot be the basis for this claim.

Turning to the question of the move to Space 00, the Complaint makes clear that for the transfer, the reason for the denial was some kind of debt owed by a previous occupant in the amount of $12,000. While Plaintiff alleges such debt should not run with the home, that is irrelevant to this claim. Plaintiff's theory is the denial of the disability accommodation is disability discrimination. Plaintiff does not adequately allege facts supporting that the denial was because of a handicap, as opposed to the stated reason, which was the existing debt.

Finally, and in line with the rest of this claim, the lack of action by Cooperative Defendants on the OHCS application is also not tied to the handicap. Plaintiff neither alleges nor provides facts from which the Court could infer that the delayed action was by reason of her handicap.

Count 3 is dismissed with leave to amend.

---

[2] "[A] court may take judicial notice of its own records in other cases[.]" *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### IV. Count 4: Coercion. Intimidation, Threats, Interference, and Retaliation under § 3617.

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

A prima facie case of retaliation requires three elements: "(1) she engaged in a protected activity, (2) an adverse housing consequence is causally linked to that activity, and (3) there was resulting damage." *Jay v. Grand Mgt. Services, Inc.*, 783 F. Supp. 3d 1257 (D. Or. 2025) (citing *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998)). "'In the context of a § 3617 claim, that adverse action must be in the form of coercion, intimidation, threats, or interference.'" *Id.* (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (cleaned up)).

Plaintiff alleges that her son engaged in protected activity when he, acting on her behalf, "object[ed] to a denial believed to be discriminatory, and [spoke] at Board meetings on behalf of a disabled resident."

Plaintiff alleges that adverse acts were:

> [E]xcluding her household from the Board's open meetings; discussing a "probationary period" aimed at her household and applied to no one else; returning her membership fee unopened and leaving her second tender unanswered while admitting later applicants; refusing her records "because [Plaintiff or her son were] not members"; leaving her replacement request undecided past the deadline, then denying it without a quorum or a reason; and ignoring her Space 00 and lift requests.

Compl. ¶ 94.

First, the Court will dispose of the adverse actions that do not have an adequate causal link. First, the Complaint makes clear that the "open meetings" were in fact limited to members, which neither Plaintiff nor her son were. Second, "discussing a 'probationary period'" is not an adverse action, as Plaintiff does not allege this was ever instituted or applied to her. Third, returning the first tendered membership fee is consistent with Oregon law, for the reasons if previously discussed. Fourth, the date of the second membership application is not pleaded specifically enough to establish it was after she took title to the home, nor that Plaintiff met all six of the bylaw requirements at that time. Fifth, the request for the Cooperative's records was allegedly denied because they were not members.

Turning to the three remaining adverse actions—leaving Plaintiff's replacement request undecided past the deadline, denying the same in early August, and ignoring her Space 00 and lift requests—none of these are "coercion, intimidation, threats, or interference[,]" and they do not suffice to state a claim under § 3617. Even if the denial in August could count as interference, no damage resulted: Plaintiff did not qualify for the program within the deadline for a wholly independent reason—ownership—which was entirely in the control of her son. If the Cooperative's approval had been given within the deadline, she still would have failed to meet OHCS's requirements. To the alleged "ignoring" of accommodations, Plaintiff pleads that the Bylaws require that "[a]ny *approval or permission granted* by the Board to a resident or request of the Board to a resident must be in writing," Compl. ¶ 44. That is to say, as pleaded, a denial does not require anything in writing, only an approval

does. Plaintiff's basis for the claim is the lack of response. But Plaintiff does not adequately plead that she was owed a response in the case of a denial.

Additionally, the request to move into Space 00 happened in January 2026, and no dates prior to that are given for Plaintiff's son speaking at board meetings or advocating on her behalf. The same is true for the first denial of membership in December 2025. No causal link can be inferred without adequately pleading that the adverse action occurred after the protected activity.

Count 4 is dismissed with leave to amend.

## V. Count 5: Declaratory and Injunctive Relief Compelling Membership under ORS 62.809.

Plaintiff seeks a declaration that Plaintiff meets all conditions of membership and an order directing Dexter Oaks Cooperative to admit her as a member. To state a claim for declaratory judgment, Plaintiff must allege the facts showing she is entitled to relief.

As discussed above, Plaintiff has not pleaded that she meets all the requirements in the Cooperative's bylaws. And, again, Plaintiff referred the Court to a separate case that recounts a successful eviction that appears to disqualify Plaintiff from membership.

Count 5 is dismissed with leave to amend.

## VI. Count 6: Declaratory Judgement regarding unlawful acts by the board of Dexter Oaks Cooperative.

Plaintiff seeks a declaration that the various "refusals" by Defendant Delta Oaks Cooperative were unlawful acts by the Cooperative's board of directors (the

"Board") because of an alleged lack of a quorum in violation of the park's bylaws. Those refusals include the lack of response to tendering of membership applications in December 2025 and August 2026, as well as the denial of the OHCS approval in August 2026.

Additionally, Plaintiff asks the Court to declare that (1) "any decision on her membership must be made by a Board acting with a quorum, at a meeting open to members under Bylaw 8.8, and recorded in minutes that reflect the decision;" and (2) "the Board must produce, on request, the minutes, attendance records, and election ballots." Compl. ¶ 100.

Plaintiff alleges that the Board acted without a quorum, and so its actions were unlawful. The Court accepts that fact at this stage. But, as the Court has explained, Plaintiff did not meet the threshold statutory qualification for membership in December 2025, as she did not own the home. Plaintiff does not plead that the second application post-dated the transfer of the property. Most importantly, Plaintiff failed to plead two necessary facts to qualify her for membership—credit history and eviction record—and by her own account, has a disqualifying eviction record.

The denial of the OHCS application came after deadline had passed and it is uncertain that the denial post-dated the transfer of ownership of the home from Plaintiff's son to Plaintiff, and within a week of that transfer, permission was granted. Because Plaintiff is not a member, under the facts pleaded, she has no right to attend meetings or access records.

Count 6 is dismissed with leave to amend.

### VII. Count 7: Financial Abuse of a Vulnerable Person under ORS 124.100-110.

Under Oregon law, a claim under ORS 124.110 for financial abuse of a vulnerable person requires four elements: "There must be (1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful." *In re Peltier*, 643 B.R. 349, 361 (Bankr. App. 9th Cir. 2022) (internal quotations and citations omitted). Oregon courts have relied on the dictionary definitions of "take" and "appropriate," as well as a definition from a companion statute for "appropriate." *Id.*

"Take" means "to transfer into one's own keeping or to enter into or arrange for possession, ownership, or use of." *Id.* (internal quotations omitted and alterations normalized.)

"Appropriate" means "to claim or use as if by an exclusive preeminent right" and "to [e]xercise control over property of another, ... permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property." *Id.* (internal quotations omitted and alterations normalized.)

Here, Plaintiff alleges that lack of approval of membership fits within the contours of the law. She claims that her rent, membership fee, exclusion from meetings, and the lack of approval of the OHCS program are all violations of the statute.

The Court does not reach any other elements, as the claim fails to allege a "taking" or "appropriation." There is no allegation that any Defendant transferred

anything into their own keeping or arrange for possession, ownership, or use of that property.

First, the Court has discussed Plaintiff's issues with membership at length. In sum, she did not qualify for it prior to August 19, 2026, and has not adequately alleged that she qualifies for it today. That cannot be a taking or appropriation. The same can be said for the meetings, attendance at which requires membership.

Second, Plaintiff's rent payments at "member's rate" does not allege a taking. Plaintiff does not plead that members pay anything more than non-members. Charging rent, without more, is neither a taking nor an appropriation.

Third, the lack of OHCS approval is not a taking: Plaintiff did not qualify for the program within the deadline set by OHCS. Defendants cannot take or appropriate something that Plaintiff never had or to which she never had the right.

Finally, regarding the membership fee, Plaintiff admits that the first fee was returned. Compl. ¶ 10. The second fee was in the form of check, which has not been cashed. *Id.* at 13. Neither a returned fee nor an uncashed check can be a taking or appropriation.

Plaintiff fails to plead the requirements of this claim, so the claim is dismissed with leave to amend.

## VIII. Count 8: Intentional Interference with Economic Relations.

> To prevail on a claim for intentional interference with economic relations, a plaintiff must establish six elements: "(1) the existence of a professional or business relationship (which could include, e.g., a contract or prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between

> the interference and damage to the economic relationship, and (6) damages."

*DeWalt Productions, Inc. v. City of Portland*, No. 3:14-CV-1017-AC, 2016 WL 6089718 at *18 (D. Or. Oct. 17, 2016) (quoting *McGanty v. Staudenraus*, 321 Or. 532, 535 (1995)).

"A claim 'is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means.'" *Sanford v. Hampton Res., Inc.*, 298 Or. App. 555, 563 (2019) (quoting *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209 (1978)).

To qualify as improper means, "the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." *Id.* (internal quotation marks and citation omitted). "Examples of improper means include violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Id.* (internal quotation marks and citation omitted).

To qualify as an improper purpose, "the purpose must be to inflict injury on the plaintiff as such." *Id.* (internal quotation marks omitted). Acts that are "wholly consistent with the defendant's pursuit of its own business purposes as it saw them" do not qualify as an improper purpose. *Id.* at 563-64 (internal quotation marks omitted).

Here, Plaintiff asserts that the Cooperative Defendants interfered with Plaintiff's alleged plan of purchasing the home owned by her son at Space 00 in January 2026. Plaintiff alleges that Defendants "intentionally interfered with [the purchase of the home at Space 00] by refusing to answer her accommodation request and by conditioning any transfer of the home at Space 00 on payment of more than $12,000 owed by a former occupant who had been evicted." Compl. ¶ 107. Plaintiff alleges this was done for an improper purpose and by improper means.

For improper means, Plaintiff states "the Board's failure to consider the accommodations [invited by] its own Bylaw 3.1(3)(g) and Rule l.b." *Id.* ¶ 72. Plaintiff also states that "the Space 00 . . . request[] [was] never answered at all." *Id.* ¶ 80. For improper purpose, Plaintiff states that "Defendants acted because of Carolyn Lohr's disability and her requests for accommodation, and in retaliation for her son's advocacy on her behalf[.]" *Id.*

Plaintiff pleads that she both requested to purchase the property from her son and, if not transferred, to move into the property as an accommodation. The accommodation cannot be the basis for this claim—the asserted economic relationship was the purchase of the home at Space 00. Additionally, while Plaintiff states that that the goal of her and her son was the sale of the home at Space 00, Plaintiff does not allege any contract, sale price, or other indication of a bona fide sale. Nevertheless, the Court accepts at this stage that there was a planned sale, creating an economic relationship between Plaintiff and her son.

Regarding the improper means, Plaintiff has not shown that "the means [] violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." In fact, Plaintiff alleges that the Board "fail[ed] to consider the accommodations [invited by] its own Bylaw 3.1(3)(g) and Rule l.b." As stated above, the accommodation request is irrelevant to this claim, which is based on a planned sale of the unit, not the request to occupy it.

Additionally, Plaintiff has not alleged that the Cooperative Defendants violated an "objective, identifiable standard," nor that the Board engaged in "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." Plaintiff has not shown anything was done by improper means.

Turning to improper purpose, Plaintiff allegations are essentially a claim that the Board was motivated by retaliation. But many of the cited reasons for retaliation do not jibe with the timeline. First, Plaintiff asserts the denial of the transfer was in retaliation for her accommodation requests. But the accommodation request to move into the home at Space 00 in January 2026 is the first accommodation request alleged by Plaintiff. And the Court cannot determine which came first: the request to transfer ownership or the request for accommodation. That is an important fact to allow the Court to infer a retaliatory motive. Plaintiff also alleges that Defendants' denial was motivated by Plaintiff's son's advocacy on her behalf. But the only date given for Plaintiff's son's advocacy before the board is "from January 2026 onward." Compl. ¶

92. By consistently omitting specific dates for the events asserted to show an alleged retaliatory motive, the Plaintiff prevents the Court from drawing any inference of retaliation for the denial of the sale of the home in Space 00.

While Plaintiff asserts retaliation without the necessary underlying facts, Plaintiff specifically pleads a more concrete purpose for the Board to deny the sale: a request to pay off a $12,000 debt. Plaintiff asserts that debt is personal to the former occupant, but collecting a debt is "wholly consistent" with Defendants' "pursuit of [their] own business purposes as [they] saw them[,]" and so is not an improper purpose.

Count 8 is dismissed with leave to amend.

**IX. Count 9: Failure to Make a Reasonable Modification under 42 U.S.C. § 12132 and 29 U.S.C. § 794.**

Under 28 C.F.R. § 25.130(b)(7)(i), an implementing regulation of the ADA, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 25.130(b)(7)(i).

Section 974 of Title 29 states that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance [.]" 29 U.S.C. §794(a).

This is the only claim against Defendants OHCS and Andrea Bell. Plaintiff claims that OHCS (1) changed its rules after approving Plaintiff; and (2) did not make a reasonable accommodation by retroactively changing the deadline for her to submit proof of ownership and approval from the park itself.

First, Plaintiff states that "[t]he approval [by OHCS in June 2026] was conditioned on verification of ownership and residency and of the park's permission, and it was to expire in sixty days, on July 31, 2026."

Second, according to the Complaint, Plaintiff did not ask for a reasonable modification from OHCS until after the deadline had already passed.

Third, the Court does not see the relationship between the modification and Plaintiff's disability. No reason is given for why a seizure disorder requires extended deadlines to avoid discrimination, particularly because Plaintiff alleges that her son was the one communicating with OHCS as her "authorized representative." Compl. ¶ 46. Plaintiff did not miss the deadline because of her disability. She admits she missed the deadline because (1) she did not own the home, and (2) she lacked Cooperative Defendants' approval. Neither of those facts are connected to Plaintiff's disability insofar as they apply to OHCS or Defendant Bell.

Regarding rule changes, Plaintiff apparently sought to demolish and replace a home she did not own using a state grant. Plaintiff did not request permission from the park until April 2026, though she applied to the program in September 2025. The Court takes judicial notice that the official "program guide" for the OHCS

replacement program on the State of Oregon website.[3] After determining that a person and their current home meet the threshold qualifications, the program guide lists as the first step as: "For *homeowners* who live in a mobile home park, contact your park manager and o*btain permission to replace your manufactured home*." *Manufactured Home Replacement Program 2025: Program Guide*, https://www.oregon.gov/ohcs/mmcrc/Pages/MHRP-program-guide.aspx (last visited Oct. 22, 2026) (emphasis added). The program guide both states that the program is for "homeowners" and that an applicant should start with a park's approval. Plaintiff (or her son) ignored the basic program details and recommendations. While Plaintiff is disabled, nothing in this situation indicates discrimination based on disability or justifies changing already missed deadlines, relief from which was not sought until after expiration.

Turning to the claim under § 794, that claim fails because Plaintiff has not shown that OHCS excluded her from the program "solely by reason of her disability." Defendant conditionally approved Plaintiff and only denied her because she did not meet the requirements prior to the deadline. That is a legitimate reason to deny participation and cannot be reconciled with "*solely* by reason of disability."

Count 9 is dismissed with leave to amend.

[3] "Fed.R.Evid. 201(b)(2) permits judicial notice of a fact that is 'not subject to reasonable dispute in that it is ... (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Wilson*, 631 F.2d at 120.

## CONCLUSION

For the reasons set forth above, Plaintiff's IFP petition, ECF No. 2, is GRANTED but the Complaint, ECF No. 1, is DISMISSED in part with leave to amend consistent with this opinion within 30 days.

It is so ORDERED and DATED this ____4th_____ day of November 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge